# In the United States Court of Federal Claims

No. 23-1048 T
(Filed: June 13, 2024)
(NOT FOR PUBLICATION)

```
* * * * * * * * * * * * * * * * * *  *
                                      *
JOHN SALCIDA,                         *
                                      *
                 Plaintiff,           *
                                      *
      v.                              *
                                      *
THE UNITED STATES,                    *
                                      *
                 Defendant.           *
                                      *
* * * * * * * * * * * * * * * * * *  *
```

*John A. Salcida*, *Pro Se*, of San Diego, CA.

*Elizabeth Villareal*, Trial Attorney, Court of Federal Claims Section, Tax Division, Department of Justice, of Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff John A. Salcida believes that the government owes him $1,981.50 in tax refunds and interest for the 2020 tax year and $1,800 in educational tax credits for the 2022 tax year. The government, moving to dismiss, claims that it paid him all that it owes, and that his claims to any more tax money rest upon a mistaken understanding of the tax credits he claims. As the government has paid Plaintiff all he requests and limitations on the tax credits he claims prevent him from receiving any more, this Court grants the government's motion to dismiss.

## BACKGROUND

Plaintiff is a prisoner at a state correctional facility in San Diego, California. *See* ECF No. 13. On May 6, 2022, Plaintiff received a $1,800 payment from the Internal Revenue Service ("IRS"). ECF No. 1 at 1. Three days later, Plaintiff received a letter from the IRS that stated that he received an adjusted refund of $1,800 for federal education credits during the 2021 tax year. ECF No. 1-1 at 2. On July 4, however, he received another letter from the IRS. ECF No. 1-1 at 5. This letter stated that he was entitled to another $1,800 refund for the 2020 tax year because of the Recovery Rebate Credit ("RRC"), a program that the federal government implemented as part of the nationwide COVID-19 relief package. *Id.*; ECF No. 23 at 2. Unsure of whether the check that preceded the letters was for the 2020 RRC tax refund or for the 2021 education tax refund, he waited for another check to arrive containing the remaining balance of

$1,800 to which he believed he was entitled. ECF No. 1 at 1–2. According to Plaintiff, no second check ever arrived. *Id.* at 2.

Seeking to remedy what he believed was a discrepancy, Plaintiff wrote letters to the IRS at various locations to inquire why he had not received a second check. *Id.* He states that the IRS never responded to his inquiries, never sent him a notice of disallowance, and never gave him the money to which it stated he was entitled.[1] *Id.* After 14 months of apparently fruitless letter-writing, Plaintiff filed suit in this Court against the IRS on July 7, 2023, seeking the original $1,800 and the interest that allegedly accrued because of the delay in receipt. *Id.* at 2. Plaintiff moved almost immediately for alternative dispute resolution, hoping that the government would quickly "correct their error and agree to issue" the money. ECF No. 9 at 2. Plaintiff added another claim within this motion not found in his original complaint. He reported that he received "[o]n February 27, 2023, . . . [an] Adjustment Letter for tax year 2022 from $1,800 refundable education credit to $1,000." *Id.* He filed a contesting letter. *Id.* Though the IRS allegedly informed him that he would receive "his refund or notice between 60 days," Plaintiff claims that the IRS issued neither the reduced refund they stated nor a disallowance. *Id.* at 1. Recognizing that Plaintiff's incarcerated status would likely only delay disposition of this case if it allowed alternative dispute resolution and that the government opposed it for that reason, this Court denied Plaintiff's motion. ECF No. 15.

The government moved to dismiss Plaintiff's case on September 29, 2023. ECF No. 17. It explained that the IRS had paid Plaintiff all that it owed him. The refundable tax credit that the COVID-19 relief package issued, the government explained, authorized payment in two parts for the 2020 tax year: one for $1,200 and one for $600 for a total of $1,800. *Id.* at 3. It produced IRS records of Plaintiff's 2020 Account Transcript, which, though it included "entries crediting plaintiff's account with the $1,200 and $600 Rebate Recovery Credits, and then entries removing those credits," *id.*, also showed "that plaintiff's account was credited for $1,800, and that credit was never reversed or removed," *id.* at 4; ECF No. 17-1 at 7–8. The government concluded that these documents showed that the IRS had already issued Plaintiff the 2020 refund he requested and that the case was, therefore, moot. ECF No. 17 at 4. The government claimed also that Plaintiff "misunderstood the May 9, 2022, letter" apparently entitling him to an education tax credit. *Id.* at 5. The letter, according to the government, "did not 'adjust the refundable education to $1,800.' . . . The IRS instead disallowed the claimed education credit, but acknowledged that plaintiff was still owed, on net, a $1,800 refund." *Id.* That letter simply reflected the fact that the government still owed him $1,800 in tax refunds, which it paid thereafter. It supported this categorization with Plaintiff's 2021 Account Transcript. *Id.* at 5–6. The government concluded that the case was moot on both of the counts in Plaintiff's complaint. It did not address the third claim he appended to his motion for alternative dispute resolution.

---

[1] It is unclear, however, whether this is true. The government attached an exhibit to its motion to dismiss Plaintiff's first complaint that seems to be a letter of decision from the Donovan Correctional Facility's Office of Grievances dated April 17, 2023. ECF No. 17-1 at 13. The letter stated that the IRS had already paid Plaintiff both refunds and suggests that Plaintiff was successful in receiving some response from the IRS prior to filing suit in this Court. *Id.*

Plaintiff responded on October 20, 2023.  ECF No. 20.  He both clarified his initial arguments and sought permission to amend his complaint, *id.* at 1, a request the Court granted on October 24.  ECF No. 21.  The resulting amended complaint incorporated his claim from his motion for alternative dispute resolution that the government owed him either $1,800 for the 2022 tax year from the education tax credit or the reduced $1,000 total it stated in a letter to him.  ECF No. 22 at 2–3.  He maintained that the government owed him $1,800 for the 2020 tax year from RRC refunds but acknowledged that he received a check for $1,800 during the 2021 tax year he requested originally.[2]  *Id.* at 2–3.  Plaintiff clarified that he had already received the $1,200 and $600 RRC refunds the government described in its motion to dismiss.  *Id.* at 2.  He insisted, however, that he "had not received [RRC] no. 3 for $1,800."  *Id.*  In other words, he claimed entitlement to a third payment of $1,800 in COVID-19 tax relief separate from the $1,800 2020 tax year COVID-19 tax relief he had already received.  Additionally, he challenged the government's documents purporting to show that he already received the refunds he sought, arguing that the government "only provide[d] tax transcripts, but not the adjustment letters or the alleged notice of disallowance."  ECF No. 20 at 2.

The government acknowledged that the Plaintiff's amended complaint mooted its original motion to dismiss in its reply.  ECF No. 24 at 1.  Moving to dismiss the amended complaint, the government maintained the case was moot and that Plaintiff was mistaken in claiming that there was a third COVID-19 tax relief allowance applicable to him.  The government explained that Congress approved the third tax refund credit that Plaintiff described but that it was applicable for only the 2021 tax year rather than the 2020 tax year as Plaintiff claimed.  ECF No. 23 at 3.  This third tax refund also authorized awards up to only $1,400 rather than the $1,800 claimed by Plaintiff.  *Id.* at 4.  The government pointed again to Plaintiff's 2021 Account Transcript, which, it stated, showed a deposit of $1,400 for that year.  ECF No. 23-1 at 11.

The government additionally argued that Plaintiff had misconstrued the allowance available for the education tax credit he claimed.  This education tax credit, the government explained, applied to "qualified education expenses of eligible students for the first four years of higher education," and allowed them to "reduce[] the amount of tax reported by the taxpayer on a dollar-for-dollar basis up to $2,500."  ECF No. 23 at 5.  Only $1,000 of that money was refundable, however; the other $1,500 could only be used to reduce the tax owed.  *Id.* at 5–6.  The government stated once again that Plaintiff's 2022 Account Transcript revealed that he had already been given $1,000 for the refundable portion of the educational tax credit.  *Id.* at 6.  As Plaintiff had already received both claimed tax refunds, the government considered the case moot and otherwise argued that Plaintiff failed to state a claim.  *Id.* at 8.

Plaintiff responded to the government's second motion to dismiss on November 28.  He restated his arguments from previous briefings and insisted again that the government "presented no evidence that [he] received the Education Refundable Credit or a notice of disallowance being issued" besides the yearly account transcripts.  ECF No. 25 at 4.  The government replied on December 15 and defended its use of the Plaintiff's account transcripts as a legitimate attempt to

---

[2] Plaintiff claims that this $1,800 was for "Education Credit for year 2021."  ECF No. 22 at 2.  This characterization is inconsistent with the government's statement that it had "not 'adjust[ted] the refundable education to $1,800.' . . . The IRS instead disallowed the claimed education credit, but acknowledged that plaintiff was still owed, on net, a $1,800 refund."  ECF No. 17 at 5.

3

clarify the case's jurisdictional facts. ECF No. 26 at 3–5. With this Court's permission, ECF No. 28, Plaintiff sur-replied on January 11, 2024, ECF No. 27-1. He urged the Court to allow him to proceed to discovery to clarify the disputed facts in this case and scrutinized the government's account transcripts. ECF No. 27-1 at 1–7.

The Court ordered supplementary briefing on February 6, 2024. ECF No. 29. After reviewing the tax return transcripts that the government provided, the Court determined that they "d[id] not appear to show that Plaintiff received the payments the government references that would make Plaintiff's claims moot." *Id.* at 1. While the transcripts "show[ed] a refund for $1,400 issued on October 1, 2021, and a refund of $1,400 issued on June 27, 2022, and a $1,400 refund cancelled on July 4, 2022, it also show[ed] a credit of $1,400 on April 15, 2022, and an account balance of -$1,400." *Id.* at 1 n.2. The Court also wanted to know whether the IRS had actually paid the $1,000 it claimed that it did for the 2022 tax year.[3] The government responded as ordered on February 29, 2024. ECF No. 30. It confirmed that

> the IRS removed a $1,400 credit from plaintiff's account, without direction from defendant's counsel or the IRS Office of Chief Counsel. . . . likely because the IRS determined that the second $1,400 credit—which was generating the account balance of -$1,400—had been incorrectly added to the account and was duplicative of the first $1,400 credit, which had been successfully issued on October 1, 2021.

*Id.* at 2. Additionally, it attached a letter from Plaintiff to the IRS dated January 17, 2022, that indicated that he received the $1,400 check. ECF No. 30-1 at 9. The government also confirmed that Plaintiff's $1,000 2022 education tax credit refund remained uncancelled. ECF No. 30 at 3; ECF No. 30-1 at 12.

## DISCUSSION

### A. Legal Standard

Under RCFC 12(b)(1), this Court must dismiss any claim that does not fall within its subject matter jurisdiction. In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all factual allegations made by the non-movant party and draw all logical inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, if a motion to dismiss for lack of subject matter jurisdiction

> denies or controverts the pleader's allegations of jurisdiction . . . the allegations in the complaint are not controlling, . . . and only uncontroverted factual allegations are accepted as true for purposes of the motion. . . . All other facts underlying the

---

[3] The Court noted that "[w]ith regard to the maximum refundable education credit of $1,000 for the 2022 tax year, while Exhibit C shows that the $1,000 payment was made, the date that the 2022 Account Transcript in support thereof was processed (October 31, 2023) is so close in time to the payment (October 16, 2023) that it is possible that the payment was effectively cancelled like several other attempts at paying Plaintiff reflected on the other transcripts the government provided to the Court in support of its motion. *See, e.g.*, ECF No. 23-1 Ex. A (showing an "[u]ndelivered refund returned to IRS")." ECF No. 29 at 1.

> controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court. . . . In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review extrinsic evidence to the pleadings, including affidavits and deposition testimony.

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993).

This Court, like all federal courts, has a limited jurisdiction. Under the Tucker Act, the Court of Federal Claims may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States . . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within this Court's Tucker Act jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id.* Stated differently, a plaintiff must state a claim based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). It is well established that the Tucker Act's jurisdictional grant extends to suits for the refund of taxes. *See Ont. Power Generation v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004); *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002); *Shore v. United States*, 9 F.3d 1524, 1525 (Fed. Cir. 1993); *cf.* 28 U.S.C. § 1346(a)(1) (granting the district courts concurrent jurisdiction over tax refund suits with the Tucker Act's grant of such jurisdiction to the Court of Federal Claims).

Even if this Court has jurisdiction over a claim, the Court must nonetheless dismiss the claim under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). If the plaintiff states facts in his or her pleadings that, even when viewed in the light most favorable to the non-movant party, are "fatally flawed in their legal premises," the Court must dismiss the claim. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

Finally, although the Court holds a *pro se* litigant's pleadings to "less stringent standards than formal pleadings by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citations omitted). Accordingly, a *pro se* plaintiff still "bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

### B.      Plaintiff's Claimed Tax Credits

After all of these briefs, Plaintiff remains convinced that the government owes him $1,981.50 ($1,800 plus interest) in tax refunds and interest for the 2020 tax year and $1,800 in educational tax credits for the 2022 tax year. While the Court presumes normally that all the facts in a plaintiff's complaint are true for the purposes of a motion to dismiss, the government produced evidence that purports to show that Plaintiff has already received the monies he claims are due. As the Court lacks jurisdiction over Plaintiff's case if the government has already issued Plaintiff the tax refund he claims, the Court must weigh the evidence before it to decide whether a preponderance of the evidence suggests that Plaintiff may have a claim for tax relief.

Plaintiff's account transcripts produced by the government suggest that he received $1,800 in tax credits for the 2020 tax year, $1,400 in tax credits for the 2021 tax year, and $1,000 in tax credits for the 2022 tax year. ECF No. 23-1 at 4–14. Plaintiff's claims before this Court are for $1,800 (plus interest) for the 2020 tax year based on the "Recovery Rebate Credit" related to the COVID-19 pandemic, ECF No. 22 at 2, and for $1,000 for the 2022 tax year based on the education tax credit, which he claims should actually be $1,800, *id.* at 3. Plaintiff responds that these transcripts are "not verified," and suggests that the Court use his IRS adjustment notices as the sole evidentiary source to determine whether the case is moot. ECF No. 27-1 at 4. But Plaintiff's mere suggestion is not enough. Rather, because "[t]he IRS's administrative files . . . are presumed to be true, accurate, and correct," *Harris v. United States*, 44 Fed. Cl. 678, 682 (1999) (citing *Sun Oil Co. v. United States*, 215 Ct. Cl. 716, 746 (1978)), Plaintiff had to present reliable evidence to the contrary to rebut this presumption. Moreover, contrary to Plaintiff's argument, the IRS's transcript records are verified: the government submitted a sworn affidavit from an attorney for the IRS's Office of Chief Counsel attesting to their authenticity, ECF No. 23-1 at 1–3, and each transcript clearly identifies Plaintiff's name and bears the IRS's seal, *id.* at 5–14. Plaintiff cannot rely solely on the IRS adjustment notices he possesses, which are merely a snapshot in time, to prove that the government still owes him money.

Both of Plaintiff's claims rely on a mistaken interpretation of his own documents. Plaintiff received three IRS adjustment notices: two that stated that he would receive $1,800 and one that originally stated that he would receive $1,800 but that the government subsequently reduced to $1,000. ECF No. 1-1 at 2, 5; ECF No. 9 at 2. Plaintiff naturally assumed that the government owed him $4,600 (and potentially as much as $5,400 because he claims the government's adjustment to his 2022 education tax credits was in error). When he received only one check for $1,800, which he came eventually to believe was for education tax credits from the 2021 tax year, he again naturally assumed that he would get $2,800 (or as much as $3,600) more and deduced that part of the remaining amount was for a payment he had heard that he would receive: a third COVID-19 relief payment. ECF No. 22 at 2–3. However natural these assumptions may have been, the relevant law does not permit any more payment than what the IRS account transcripts reveal Plaintiff received.

Plaintiff received all of the COVID-19 tax relief the government owes him. Congress authorized three COVID-19-related tax refunds: 26 U.S.C. § 6428, 26 U.S.C. § 6428A, and 26 U.S.C. § 6428B. They authorized a $1,200 payment in 2020 (26 U.S.C. § 6428), a $600 payment in 2020 (26 U.S.C. § 6428A), and a $1,400 payment for 2021 (26 U.S.C. § 6428B).

There was never, as Plaintiff seems to believe, a third COVID-19 tax refund that entitled him to $1,800 in 2020. ECF No. 22 at 2. Plaintiff assumed that because the first COVID-19 tax refunds totaled $1,800 any other relief Congress authorized must equal the same amount. This is not the case, however, and Plaintiff could not have received the COVID-19 tax relief he requested in either the amount or the year he claims. As the IRS account transcripts reveal that he received $1,800 in tax refunds for the 2020 tax year through the statutory allotments described, ECF No. 23-1 at 5–8, and a $1,400 tax refund for the 2021 tax year as described in the statute,[4] ECF No. 30-1 at 5–7, Plaintiff has no claim for any further COVID-19 tax relief and his complaint is moot.[5]

Plaintiff based his claim for $1,800 in education tax credits for the 2022 tax year on a similarly understandable, but mistaken, view of lawful entitlements. Plaintiff believed that he received an $1,800 check for education tax credits in the 2021 tax year,[6] ECF No. 22 at 3, and assumed logically that he would receive that amount when he received the second letter for education tax credits in 2022, *id.* at 9–10. The law, however, does not support that assumption. The IRS offers two tax credits for higher education: the American Opportunity Tax Credit, 26 U.S.C. § 25A(b), and the Lifetime Learning Tax Credit, 26 U.S.C. § 25A(c). The American Opportunity Tax Credit permits a credit for "100 percent of so much of the qualified tuition and related expenses paid by the taxpayer during the taxable year (for education furnished to the eligible student during any academic period beginning in such taxable year) as does not exceed $2,000, plus 25 percent of such expenses so paid as exceeds $2,000 but does not exceed $4,000." 26 U.S.C. § 25A(b)(1)(A), (B). That totals $2,500 in potential tax benefits, but only "[f]orty percent of so much of the credit allowed under subsection (a) as is attributable to the American Opportunity Tax Credit" is the "[p]ortion of [the] American Opportunity Tax Credit made refundable." 26 U.S.C. § 25A(i). As 40 percent of $2,500 is $1,000, a taxpayer who claims an American Opportunity Tax Credit can get only that amount directly from the IRS; the rest must be deducted from the taxpayer's overall tax bill. As the tax transcripts suggest that Plaintiff received $1,000 in tax refunds during the 2022 tax year, ECF No. 23-1 at 13–14, he has, therefore, received all he is entitled to under the American Opportunity Tax Credit.

The Lifetime Learning Tax Credit similarly forecloses the refund Plaintiff claims. It provides "an amount equal to 20 percent of so much of the qualified tuition and related expenses

---

[4] As the government's supplementary briefing describes, "the IRS removed a $1,400 credit from plaintiff's account, without direction from defendant's counsel or the IRS Office of Chief Counsel. . . . likely because the IRS determined that the second $1,400 credit—which was generating the account balance of -$1,400—had been incorrectly added to the account and was duplicative of the first $1,400 credit, which had been successfully issued on October 1, 2021." ECF No. 30 at 2. Plaintiffs' account, which had previously indicated that he did not receive his promised payment, ECF No. 23-1 at 13–14, now reflects that he received his third COVID-19 tax refund.

[5] As Plaintiff has no right to the $1,800 in COVID-19 tax relief he claims, he also has no right to the $181.50 in interest he added onto that total for the government's failure to pay it.

[6] It is still unclear how logical this belief was. The government claims that "Plaintiff has misunderstood the May 9, 2022, letter [entitling him to $1,800]. It did not 'adjust the refundable education to $1,800.' . . . The IRS instead disallowed the claimed education credit, but acknowledged that plaintiff was still owed, on net, a $1,800 refund." ECF No. 17 at 5. That letter, according to the IRS, simply reflected the fact that the government still owed Plaintiff $1,800 in tax refunds, which it paid thereafter.

paid by the taxpayer during the taxable year (for education furnished during any academic period beginning in such taxable year) as does not exceed $10,000." 26 U.S.C. § 25A(c)(1). The maximum relief it provides, therefore, is $2,000. Unlike the American Opportunity Tax Credit, however, none of the Lifetime Learning Tax Credit is refundable directly to the taxpayer. *See* 26 U.S.C. § 25A(i) (mentioning only the American Opportunity Tax Credit when discussing portions made refundable). Thus, even if Plaintiff had claimed a Lifetime Learning Tax Credit, he would not be able to receive the $1,800 he desires.

The account transcripts for the years Plaintiff complains confirm that the government has paid him the tax refunds he claims it owes him. To the extent that he claimed more than that paid to him already, the relevant law on both education and COVID-19 tax credits forecloses his receiving the claimed amount and any interest that might have accrued. Plaintiff's amended complaint is, therefore, moot, and, to the extent that it is not, fails to state a claim. As the Court lacks jurisdiction over such claims, the Court must dismiss the complaint. *See, e.g.*, *Williams v. United States*, 165 Fed. Cl. 72, 75 (2023) (dismissing claim for tax refund for lack of jurisdiction because the government issued the refund already).

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss under RCFC 12(b)(1) and (6) is **GRANTED**. The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

                                                                  s/ Zachary N. Somers
                                                                  ZACHARY N. SOMERS
                                                                  Judge