# In the United States Court of Federal Claims

No. 23-1048
(Filed: January 30, 2026)
(NOT FOR PUBLICATION)

```
* * * * * * * * * * * * * * * **   *
                                   *
JOHN SALCIDA,                      *
                                   *
                Plaintiff,         *
                                   *
        v.                         *
                                   *
THE UNITED STATES,                 *
                                   *
                Defendant.         *
                                   *
  * * * * * * * * * * * * * * * **  *
```

*John A. Salcida*, *pro se*, of San Diego, CA.

*Elizabeth Villareal*, Trial Attorney, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, with whom were *David A. Hubert*, Deputy Assistant Attorney General, *David I. Pincus*, Chief of Court of Federal Claims Section, all of Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**SOMERS**, Judge.

After this Court dismissed his case on June 13, 2024, Plaintiff John Salcida filed two motions for reconsideration and a motion for costs and fees. Specifically, Plaintiff challenges this Court's determination that he failed to state a claim regarding COVID-19 refunds and an education tax credit allegedly owed to him by the IRS. In response, the government opposed both motions for reconsideration and the motion for costs and fees. For the reasons explained below, the Court denies Plaintiff's motions for reconsideration and grants in part Plaintiff's motion for costs and fees.

## BACKGROUND

### A.    Plaintiff's Initial Claim

On July 7, 2023, Plaintiff filed a complaint in this Court alleging that the Internal Revenue Service ("IRS") failed to disburse two COVID-19 tax refunds and an education tax credit to him. ECF No. 1. The IRS had allegedly mailed Plaintiff two letters concerning an

education credit and a COVID-19 refund, informing him that he was entitled to $1,800 for each. ECF No. 1-1 at 2, 5. However, according to Plaintiff, he only received one check for $1,800, rather than the two he expected. ECF No. 1 at 1–2. Plaintiff later received an IRS letter adjusting the education credit from $1,800 to $1,000, but he allegedly never obtained the reduced refund. ECF No. 9 at 2. The government moved to dismiss Plaintiff's claim on the basis that the IRS had already paid Plaintiff all that it owed him. *See generally* ECF No. 17. The IRS provided Plaintiff's account transcripts in support of its motion and stated that it had paid Plaintiff $1,800 total in COVID-19 refunds in 2020—divided into a $1,200 and a $600 payment—but did not owe him a $1,800 education credit. *Id.* at 3–5; ECF No. 17-1 at 5–8.

In response to the government's motion, Plaintiff argued that the IRS transcripts the government provided, which showed several refunds followed by cancellations, were unreliable. ECF No. 20 at 2. Plaintiff then filed an amended complaint on October 24, 2023, reiterating that the IRS owed him the education credit and claiming another COVID-19 refund of $1,800. ECF No. 22 at 2–3. The government moved to dismiss Plaintiff's amended complaint on November 7, 2023. *See generally* ECF No. 23. Therein, the government explained that the IRS had sent Plaintiff a second COVID-19 refund of $1,400 in 2021 but that by law Plaintiff was only permitted a refund of up to $1,400—not the $1,800 that Plaintiff claimed. *Id.* at 3–4; ECF No. 23-1 at 11. The government also stated that Plaintiff received an education credit plus interest for 2022, but under law, the credit could not exceed $1,000. ECF No. 23 at 5–6; ECF No. 23-1 at 14 (showing $1,033.87 issued October 16, 2023). Thus, in total, the IRS claimed that it had paid Plaintiff $1,800 and $1,400 for two COVID-19 refunds in 2020 and 2021, respectively, and a $1,000 education credit in 2022. ECF No. 23-1 at 11, 14; ECF No. 17 at 3–4; ECF No. 23 at 6.

In this motion to dismiss, the government referenced Plaintiff's 2020-2022 account transcripts, which were accompanied by a declaration from an IRS attorney as to their accuracy. *See generally* ECF No. 23; ECF No. 23-1 at 1–3 (declaration of Jennifer Brooker). Despite the tax transcript and supporting declaration, on February 6, 2024, the Court ordered the government to provide supplemental briefing on whether Plaintiff had received the $1,400 COVID-19 refund because the 2021 transcript showed an account balance of -$1,400, among several credits and cancellations. ECF No. 29 at 1 & n.2. In reference to the $1,000 education credit, the Court requested an updated 2022 transcript because the Court was concerned that it may have the same issues (several refunds followed by cancellations) as the 2021 transcript, suggesting that Plaintiff might not have received the $1,000 education credit because it had been cancelled. *Id.* at 1–2.

On February 29, 2024, the government filed a supplemental brief explaining that the 2021 transcript showed a cancelled $1,400 COVID-19 tax payment because it was a duplicate of the $1,400 COVID-19 refund that Plaintiff had already received. ECF No. 30 at 2; ECF No. 30-1 at 5–7. The government also provided an updated 2022 transcript, which showed that the IRS had not cancelled the $1,000 education credit payment. ECF No. 30 at 3; ECF No. 30-1 at 11–12.

Based on the government's supplemental briefing, the Court issued an opinion on June 13, 2024, granting the government's motion to dismiss. *See generally* ECF No. 32. The Court found that Plaintiff failed to state a claim under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") because he had received all the relief to which he was

entitled. *Id.* at 6–7. The Court determined that the government had sufficiently demonstrated that Plaintiff had already received two COVID-19 refunds of $1,800 and $1,400 in 2020 and 2021, respectively, and one $1,000 education credit in 2022, evidenced by Plaintiff's account transcripts. *Id.* at 6–8. Because the IRS's transcripts were verified by declaration and Plaintiff did not present reliable evidence of their untruthfulness, the Court presumed them correct. *Id.* at 6.

## B.    Plaintiff's First Motion for Reconsideration

After the Court dismissed his case, Plaintiff filed a motion for reconsideration. ECF No. 34. First, Plaintiff alleges that his claim to the $1,000 education credit is no longer moot because he still had not received the refund from the IRS. *Id.* at 2–3. According to Plaintiff, the state correctional facility in which he is incarcerated returned the $1,000 check in question to the IRS upon the request of the IRS. *Id.* at 4. In support, Plaintiff provides records showing that "he never received $1,000 [for tax year] 2022 deposited into his trust account." *Id.* at 4, 15–16. Furthermore, as to the two COVID-19 refunds, Plaintiff states that his 2020 and 2021 transcripts show a -$600 and -$1,200 balance due, and the IRS also owes him another $1,400. *Id.* at 8–9. Plaintiff argues that the transcripts provided by the government are not sufficient evidence that the IRS has paid him because they show payments that he had not received. *Id.* at 3, 5.

In its response to Plaintiff's motion, the government stated that it did not object to granting Plaintiff's motion as to the $1,000 education credit because Plaintiff's most recent 2022 transcript shows that the credit was cancelled. ECF No. 35 at 1–2, 5; ECF No. 35-1 at 2–3. According to the government, this cancellation occurred on May 30, 2024, ECF No. 37 at 10, months after the government filed its February 2024 supplemental briefing, ECF No. 35 at 4. Conversely, the government did object to granting Plaintiff's motion as to the COVID-19 refunds of $1,800 and $1,400 because the Court already "considered and rejected" those arguments. ECF No. 35 at 4. To remedy the IRS's mistake regarding the education credit, the government requested that the Court reopen the case so that counsel could "recommend to an authorized delegate of the Attorney General that the United States issue a replacement check" to settle this matter. *Id.* at 5.

Up to that point, the government had given the Court three copies of Plaintiff's 2022 transcript in total—the first on November 7, 2023; the second on February 29, 2024, in response to the Court's request for supplemental briefing; and the third in the government's response to Plaintiff's motion for reconsideration on July 16, 2024—each except the last was accompanied by a declaration attesting to its accuracy. ECF No. 23-1 at 1–3, 13–14; ECF No. 30-1 at 1–3, 11–12; ECF No. 35-1 at 2–3. However, only the third transcript showed the cancellation of the education credit. ECF No. 35-1 at 2–3; ECF No. 36 at 2–3. Because the Court based its opinion dismissing Plaintiff's claims on the transcripts and the declarations verifying the transcripts, the Court ordered the government to show cause as to: (1) why the Court should not reopen the case and find for Plaintiff; and (2) why the government submitted two seemingly inaccurate transcripts. ECF No. 36 at 3. Moreover, the Court stated that the government's solution to "*recommend* to an authorized delegate of the Attorney General that the United States issue Plaintiff a replacement check" was an insufficient remedy due to the government's significant errors. *Id.* (emphasis in original).

3

In its response to the show cause order, the government explained that the transcripts previously provided to the Court did not show that Plaintiff's check was cancelled because the cancellation did not occur and thus did not appear on Plaintiff's 2022 transcript until May 30, 2024. ECF No. 37 at 10. According to the government, even though the July 16, 2024, transcript shows that the check was cancelled on October 23, 2023, it was actually cancelled on May 30, 2024. *Compare* ECF No. 35-1 at 3, *with* ECF No. 37 at 10. The cancellation date reflects October 23, 2023, because "[t]ransaction reversals are always posted with the same 'transaction date' as the original transaction . . . . Because the 'transaction date' of the original refund was October 23, 2023, the 'transaction date' of the of the cancellation also had to be October 23, 2023." ECF No. 37 at 7 (also explaining the "transaction date" is the date of the refund's effectiveness rather than the date of issuance). Therefore, the November 13, 2023, and February 19, 2024, transcripts "would not and could not have reflected that 'cancellation' because it had not yet occurred." *Id.* at 8. The government's mistake occurred because (1) the correctional facility returned the $1,000 check to the IRS for review under the IRS's Blue Bag Program; and (2) the IRS failed to place a litigation freeze on his account. *Id.* at 8–9. Because of the latter oversight, the IRS "selected plaintiff's 2022 tax return for further examination." *Id.* at 9. Consequentially, the IRS froze all refunds during the examination. *Id.* On February 21, 2024, an IRS employee analyzed Plaintiff's check, which was returned to the IRS by the prison as part of the Blue Bag Program and indicated that the October 16, 2023, check was an erroneous refund. *Id.* at 9–10. The refund check was then sent to another IRS office, where the cancellation was entered on May 30, 2024. *Id.* at 10. The government explains that, until May 30, 2024, "neither defendant's counsel nor anyone in the IRS Office of Chief Counsel had any knowledge that the check had been returned by the prison, referred to the IRS Return Integrity and Verification Operation, or was scheduled to be cancelled." *Id.* Despite this error, the government opposed entering judgment for Plaintiff because the IRS had requested and deposited the authorized concession check into Plaintiff's inmate trust account before the Court issued the show cause order. *Id.* at 11–12.

## C.    Plaintiff's Motion for Costs and Fees

On January 22, 2025, Plaintiff moved the Court to award him costs and fees. ECF No. 40. He alleges that his costs and fees total $930, divided as follows: a $350 filing fee, a $250 payment to a "[p]ara-investigator" for documentation services, and a $300 payment to an "[i]nmate [p]aralegal." *Id.* at 1. The remaining $30 in costs relate to "postage and xerox cost[s]." *Id.* On February 5, 2025, the government asked the Court to deny Plaintiff's motion for costs and fees because Plaintiff is not the "prevailing party" in this action under RCFC 54. ECF No. 41 at 2. Rather, the government argues that it has prevailed "with respect to most of the amount in controversy and the majority of the issues in [this] case." *Id.* at 3. On March 12, 2025, Plaintiff replied to the government, arguing that he is the "prevailing party" mainly because the government (1) agreed to pay Plaintiff the $1,000 education credit without requiring a court order; and (2) was able to secure a favorable judgment due to its erroneous declarations. ECF No. 43 at 2.

4

## D.    Plaintiff's Second Motion for Reconsideration

On June 9, 2025, Plaintiff filed a second motion for reconsideration, which rehashes most of the arguments made in the first.  ECF No. 44.  Therein, Plaintiff alleges that, at a settlement conference, an IRS employee admitted that the IRS still owes Plaintiff a $1,400 COVID-19 refund for 2021 and an $1,800 education credit for 2022, which constitutes "new evidence" that warrants reconsideration and demonstrates the government's "fraud."  *Id.* at 2–3.  Plaintiff also provides updated costs totaling $1,550: a $350 filing fee and $1,200 "incurred prosecuting this suit and the government raise [sic] evidence cost covers paralegal and agent power of attorney fees" to be paid via direct deposit.  *Id.* at 6.  Plaintiff further seeks "punitive or exemplary damages of $15,000" from three IRS employees.  *Id.*

On June 19, 2025, the government responded to Plaintiff's motion.  ECF No. 45.  The government argues that Plaintiff's alleged evidence is not new because it is not credible, was not "in existence at the time of the trial," and is inadmissible under the Federal Rules of Evidence.  *Id.* at 4–5.  The government also references its explanation regarding the erroneous tax transcripts to demonstrate the lack of fraud.  *Id.* at 5 (citing its prior briefing on this matter in ECF No. 37).  Plaintiff's reply on July 11, 2025, does not meaningfully respond to the government's arguments and otherwise rehashes arguments previously considered by the Court.  *See* ECF No. 46.

## DISCUSSION

## A.    Legal Standard

### 1.    Motion for Reconsideration

RCFC 59 and RCFC 60 govern motions for reconsideration of a final judgment.  Because prevailing on a motion for reconsideration requires the moving party to make a "showing of extraordinary circumstances," this Court does not often grant such motions.  *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999).  To meet this high standard, the moving party typically must show under RCFC 59 "an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice."  *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016).  And under RCFC 60:

> [T]he court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

RCFC 60(b)(1)–(6). However, even if the moving party meets the high standard for reconsideration, "[t]he decision whether to grant reconsideration lies largely within the discretion" of the Court. *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). Moreover, the Court must exercise its discretion based upon the principle that "[r]econsideration of a judgment is not intended to permit a party to retry the allegations included in plaintiff's complaint when it previously was afforded a full and fair opportunity to do so." *Hymas v. United States*, 141 Fed. Cl. 735, 738 (2019).

Additionally, the Court will deny a party's motion if the underlying claim is moot. *Cardpool, Inc. v. Plastic Jungle, Inc*., 817 F.3d 1316, 1324 (Fed. Cir. 2016) ("Whenever an action loses its 'character as a present live controversy' during the course of litigation, federal courts are required to dismiss the action as moot." (quoting *Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989))). In tax cases, "[a] case becomes moot when a claimant receives all her requested relief." *Mote v. Wilkie*, 976 F.3d 1337, 1341 (Fed. Cir. 2020); *see also Jarrett v. United States*, 79 F.4th 675, 679–80 (6th Cir. 2023) ("[T]he IRS's refund check mooted this case . . . . By law, the IRS pays the refund when it mails the original check."). Unpaid byproducts of a suit, such as court fees, do not bar a determination of mootness. *See Russell v. United State*s, 661 F.3d 1371, 1375 (Fed. Cir. 2011) ("[W]hen a court seeks to determine whether a plaintiff's claim is moot because the claim has been satisfied, the proper focus is on whether the plaintiff's principal claim has been resolved, not on whether ancillary expenses, such as court costs . . . have been paid or have accrued.").

## 2.    Award of Costs and Fees

RCFC 54 allows the Court to award costs and fees when appropriate. RCFC 59(d); *see also Fru-Con*, 44 Fed. Cl. at 315 (permitting defendant to recover costs after ruling on a motion for reconsideration). Costs other than attorneys' fees "should be allowed to the prevailing party to the extent permitted by law." RCFC 54(d)(1). In most cases, the relevant law is the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412; however, the Internal Revenue Code's version of EAJA applies in tax cases, I.R.C. § 7430. *See Whalen v. United States*, 107 Fed. Cl. 775, 776 (2012) (explaining that I.R.C. § 7430 is "[t]he Internal Revenue Code analog to the EAJA").

Section 7430 allows awarding litigation costs to "the prevailing party" in the action. I.R.C. § 7430(a)(2). To qualify as a prevailing party under section 7430, and thus recover costs through RCFC 54, "a taxpayer must show that: (1) it substantially prevailed . . . ; (2) the Government's position was not substantially justified; and (3) statutory net-worth requirements are met." *BASR P'ship v. United States*, 130 Fed. Cl. 286, 292 (2017), *aff'd*, 915 F.3d 771 (Fed. Cir. 2019). In determining the prevailing party, the Court will consider whether its decision "effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties,'" *Raniere v. Microsoft Corp*., 887 F.3d 1298, 1306 (Fed. Cir. 2018) (quoting *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016)), "by modifying one party's behavior in a way that directly benefits the opposing party," *Shum v. Intel Corp*., 629 F.3d 1360, 1367 (Fed. Cir. 2010) (internal quotations omitted); *see also B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 678 (Fed. Cir. 2019) ("A decision with judicial imprimatur is required to give rise to prevailing party status.").

6

A party can be deemed prevailing even if its case is mooted or otherwise dismissed on procedural grounds. *See B.E. Tech.*, 940 F.3d at 679 (finding that defendant was prevailing party in patent infringement action and entitled to an award of costs, though action was dismissed as moot, because the suit "rebuffed [the plaintiff's] attempt to alter the parties' legal relationship"); *see also CRST*, 578 U.S. at 420 ("A favorable ruling on the merits is not a necessary predicate to find that a defendant is a prevailing party.").[1]  Moreover, "a party is not required . . . to prevail on all claims in order to qualify as a prevailing party under Rule 54." *Shum*, 629 F.3d at 1367–68; *see also Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1348 (Fed. Cir. 2006) ("While [Defendant] prevailed on some issues, we conclude that on the whole [Plaintiff's] success in the litigation was sufficiently clear [to find] that "[Plaintiff] was the prevailing party and [to decline] to apportion costs."). Rather, the party must have "substantially prevailed with respect to the amount in controversy" or "substantially prevailed with respect to the most significant issue or set of issues presented." I.R.C. § 7430(c)(4)(A)(i).

However, "[a] party shall not be treated as the prevailing party . . . if the United States establishes that the position of the United States in the proceeding was substantially justified." I.R.C. § 7430(c)(4)(B)(i). "For a court to conclude that the United States' position was substantially justified, the position must be justified to a degree that could satisfy a reasonable person," *Adkins v. United States*, 154 Fed. Cl. 290, 300 (2021) (internal quotations omitted), and "substantial evidence" must support its position, *Larsen v. United States*, 39 Fed. Cl. 162, 168 (1997).

Finally, section 7430 only allows an award of "reasonable litigation costs incurred in connection with such court proceeding." I.R.C. § 7430(a)(2). "Reasonable litigation costs" include— "(A) reasonable court costs, and (B) based upon prevailing market rates for the kind or quality of services furnished . . . (iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding . . . ." I.R.C. § 7430(c)(1). But the Court has discretion to "determine what fee is 'reasonable'" to award the prevailing party. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court may not award costs and fees if they are unsupported by documentation. *Id.* at 433 ("Where the documentation of hours is inadequate, [the court] may reduce the award accordingly."); *see also Sabella v. HHS*, 86 Fed. Cl. 201, 211 (2009) ("The burden, however, is on [the plaintiff] to show that . . . proper documentation of the hours expended and hourly rates has been submitted.") (citation omitted).

---

[1] Although fees in *B.E. Tech*, a patent case, were governed by 35 U.S.C. § 285 and in *CRST*, a civil rights suit, by EAJA, "Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner." *CRST*, 578 U.S. at 422 (citing *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Hum. Res.*, 532 U.S. 598, 602–03, and n.4 (2001)); *B.E. Tech.*, 940 F.3d at 677 ("We interpret the term ['prevailing party'] consistently between different fee-shifting statutes [] and between Rule 54(d) and 35 U.S.C. § 285." (internal citations omitted)).

### B.    Analysis

#### 1.    Motions for Reconsideration

Although, based on the government's response to Plaintiff's first motion for reconsideration, it appears that the Court should not have dismissed Plaintiff's claim as to the $1,000 education credit,[2] the Court must nonetheless deny Plaintiff's motions for reconsideration for two reasons.  First, Plaintiff's motions concerning the $1,000 education credit are now moot, because Plaintiff has received the $1,000 to which he is entitled under the education credit provision.  *See, e.g., Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021) ("[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot.").  Second, to the extent that Plaintiff's motions make arguments unrelated to the $1,000 education credit issue, Plaintiff has not met the requirements for reconsideration as to these arguments.

First, Plaintiff's motions for reconsideration are now moot as to the $1,000 education credit.  The IRS resent the education credit payment to Plaintiff on December 17, 2024, and his correctional facility confirmed that it was deposited in Plaintiff's inmate trust account on January 2, 2025.  ECF No. 37 at 11–12.  Except with regard to the now deposited $1,000 education credit, Plaintiff's motions do nothing to disturb the Court's earlier findings.  In sum, as of June 18, 2025, Plaintiff has received all the relief he sought in his motions for reconsideration and to which he is entitled by tax law: an $1,800 COVID-19 refund, a $1,400 COVID-19 refund, and a $1,000 education tax credit.  *See* ECF No. 45-1 at 16–20; *see also* ECF No. 23 at 2–4.

Second, to the extent that Plaintiff's motions are not moot, Plaintiff has not met the requirements of RCFC 60(b) for reconsideration.  First, Plaintiff has not presented "newly discovered evidence" under RCFC 60(b)(2).  Plaintiff alleges in his second motion for reconsideration that in a settlement conference related to his case in Tax Court, "the IRS Appeals Officer 'admitted' that the IRS owed [Plaintiff] for the 2021 tax year $1,400 for COVID-related credits and $1,800 for education credits . . . ."  ECF No. 45 at 3 (quoting ECF No. 44 at 2).  The government states, and the Court agrees, that this "evidence" fails under RCFC 60(b)(2) for three reasons.  *See* ECF No. 45 at 4.  First, this evidence did not exist at the time of the Court's decision.  *Id.*; *see* 11 Wright & Miller's Federal Practice & Procedure § 2859 (3d ed. 2025).  The Court dismissed Plaintiff's case in June 2024, *see* ECF No. 32, and the alleged settlement conference did not occur until May 2025, *see* ECF No. 44 at 2.  Second, "none of what plaintiff is alleging is admissible evidence" because Plaintiff seeks to produce "statement[s] made during compromise negotiations" in order to "prove or disprove the validity . . . of a disputed claim."  ECF No. 45 at 4 (citing Fed. R. Evid. 408(a)).  Finally, Plaintiff's statements are wholly unsubstantiated; an IRS Appeals Officer likely did not "admit" that the IRS owed Plaintiff an $1,800 education credit because relevant tax law does not allow Plaintiff to obtain more than $1,000 in education credits.  ECF No. 45 at 4–5; ECF No. 44 at 2; *see also* ECF No.

---

[2] The government did not oppose granting reconsideration because "Plaintiff's 2022 account transcript currently shows a $1,000 balance due to [P]laintiff," and the transcript it provided during litigation did not show the cancellation.  *See* ECF No. 35 at 4, 6.

32 at 7.  Plaintiff's updated 2022 account transcript likewise does not indicate the $2,500 in COVID-19 refunds that he claims remain unpaid.  ECF No. 45 at 5; *see* ECF No. 44 at 4.

Plaintiff has also not shown the requisite fraud, misrepresentation, or misconduct by an opposing party to prevail on a motion under RCFC 60(b)(3).  The November 13, 2023, and February 19, 2024, transcripts that the IRS provided to verify that Plaintiff received his $1,000 education credit for tax year 2022 were inaccurate because they did not "reflect[] [the] 'cancellation' because it had not yet occurred."  ECF No. 37 at 8.  The IRS should have proceeded more carefully with its filings in this case and must better scrutinize its filings in this Court and others in the future.  However, although mistaken, the government's actions are not tantamount to fraud; the IRS did not knowingly deprive Plaintiff of his education tax credit to his detriment.  *See Fraud*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining fraud as a "knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment").  Rather, the IRS's failure to pay Plaintiff appears to be a mistake that it later corrected.  *See* ECF No. 37 at 11–12.

Finally, Plaintiff has not met the high standard of RCFC 60(b)(6) by showing "extraordinary circumstances" that warrant granting reconsideration, as Plaintiff's arguments for reconsideration are a combination of unavailing arguments and rehashing of already rejected arguments.  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).  Plaintiff's only valid ground for reconsideration has been rendered moot by the IRS's subsequent corrective action.  Accordingly, Plaintiff's motions for reconsideration are denied.

### 2.    Award of Costs and Fees

Plaintiff has also moved for an award of costs and fees.  In his motion, Plaintiff moves for $930 in costs and fees, which includes the $350 court filing fee, a $250 payment to a "Para-investigator . . . to secure documents," and a $300 payment to an "Inmate Paralegal."  ECF No. 40 at 1.  The remaining $30 is allocated to "postage and xerox cost[s]."  *Id.*  He later alleges in his Second Motion for Reconsideration that he has incurred a total of $1,550 in litigation costs.  ECF No. 44 at 6.  Although most of his alleged costs and fees are not reasonable nor documented, the Court does find that Plaintiff is a prevailing party under RCFC 54 and section 7430(c)(4).  Thus, for the reasons explained below, Plaintiff is entitled to an award of reasonable litigation costs.

First, Plaintiff substantially prevailed on his first motion for reconsideration regarding the $1,000 education credit, as it appears that this motion directly led to Plaintiff finally receiving (without cancellation) the money to which he was entitled.  Plaintiff argued in his first motion for reconsideration that he did not receive the $1,000 education credit as reflected on his 2022 account transcript, supported by documentation from his correctional facility.  *See* ECF No. 34 at 2–3, 15–16.  Plaintiff's motion caused the IRS to realize that Plaintiff never received the $1,000 credit because the check was cancelled, and Plaintiff was still entitled to payment.  *See* ECF No. 35 at 1–2; *see also* ECF No. 37 at 8–11.  As is explained above, the only reason that this Court does not grant Plaintiff's motions as to this claim is because it is now moot.  *See* ECF No. 37 at 11–12.  The government argues that it is "still the prevailing party with respect to 2020, 2021, and an $800 portion of plaintiff's original 2022 claim for $1,800.  Defendant has therefore

prevailed with respect to most of the amount in controversy and the majority of the issues in the case." ECF No. 41 at 2–3. However, that Plaintiff does not substantially prevail on the total amount in controversy is not dispositive so long as Plaintiff substantially prevails on the most significant issue presented. *See* I.R.C. § 7430(c)(4)(A)(i)(II). The most significant issue presented in Plaintiff's motions for reconsideration (specifically in his first motion for reconsideration) is his new argument concerning the $1,000 education credit in 2022. Because he prevailed on this issue, he is a "prevailing party" for purposes of section 7430(c)(4)(A) despite not succeeding on all his claims.

Of course, being a prevailing party under subparagraph (A) alone is insufficient to entitle Plaintiff to costs and fees because subparagraph (B) additionally provides that a "party shall not be treated as the prevailing party . . . if the United States establishes that the position of the United States in the proceeding was substantially justified." *Id.* § 7430(c)(4)(B). The government argues that its litigation position was substantially justified because, at the time it asserted that Plaintiff had been paid the $1,000 education credit, Plaintiff's tax transcripts showed that he had been paid the $1,000 he was owed. ECF No. 30 at 3; ECF No. 30-1 at 11–12. However, this assertion later proved to be incorrect—Plaintiff never received the $1,000 check because it was intercepted as part of the IRS's Blue Bag Program. But was the government substantially justified in making its original assertion? The answer to that question is clearly "no."

The government explained to this Court that Plaintiff had been paid all he was owed, including the $1,000 education credit; presented what turned out to essentially be false evidence that Plaintiff had been paid; and reassured the Court that Plaintiff had been paid after the Court asked the government to confirm payment. All of this caused the Court to dismiss Plaintiff's case in its entirety. It was only after Plaintiff filed a motion for reconsideration that the government realized that Plaintiff was not, in fact, paid the $1,000 he was owed. While this sequence of events may constitute the building blocks for sanctionable conduct, it certainly does not constitute the blocks upon which substantial justification is built. The government explained that these failures occurred because the IRS failed to place a litigation freeze on Plaintiff's 2022 tax account, which would have prevented the cancellation of the $1,000 education credit check. ECF No. 37 at 9. However, instead of freezing Plaintiff's account, the IRS selected Plaintiff's account for investigation, unaware that it was the subject of litigation, and placed a refund freeze on the 2022 tax year. *Id.* The IRS allegedly did not recognize this error until May 30, 2024, when the refund check was cancelled and Plaintiff's tax transcript showed a balance of -$1,000. *Id.* at 10. But the failure to place a litigation freeze on Plaintiff's account is not the substantial justification the government seeks. It is quite the opposite. It is also likely the reason that the government does not attempt to argue substantial justification in response to Plaintiff's motion for costs and fees. *See generally* ECF No. 41. And because the government carries the burden to establish substantial justification, its lack of argument on this matter alone suffices to find against substantial justification here. *See* I.R.C. § 7430(c)(4)(B)(i) (emphasis added) ("A party shall not be treated as the prevailing party . . . if *the United States* establishes that the position of the United States in the proceeding was substantially justified.").

Plaintiff has satisfied the remaining requirements for an award of reasonable litigation costs. Plaintiff meets the net worth requirements, as he is "an individual whose net worth did not

exceed $2,000,000 at the time the civil action was filed." I.R.C. § 7430(c)(4)(D). Plaintiff also has not "unreasonably protracted" the court proceedings. I.R.C. § 7430(b)(3). Ordinarily, "a 'prevailing party' must file an appeal to the IRS Appeals Office to exhaust all administrative remedies to be eligible to recover reasonable litigation costs." *BASR P'ship*, 130 Fed. Cl. at 292; *see* I.R.C. § 7430(b)(1). However, the IRS failed to raise this argument in its response to Plaintiff's motion and, therefore, waives it. *See* ECF No. 41; *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver."). Furthermore, it appears that Plaintiff attempted to resolve this dispute with the IRS directly before filing suit. *See* ECF No. 1 at 2 ("The petitioner since May 2022, has wrote [sic] the IRS at various locations . . . . Now more than 14 months and the IRS has not issue [sic] a notice of disallowance, has not issue [sic] the check, nor has even care [sic] to respond to plaintiff's inquiries . . . ."). Therefore, Plaintiff may obtain reasonable litigation costs in connection with his motions for reconsideration under I.R.C. § 7430.

However, despite Plaintiff's status as a prevailing party, only his court filing fee qualifies as a reasonable cost under I.R.C. § 7430. Of Plaintiff's requested costs and fees, the filing fee is the only fee properly documented: the Court granted Plaintiff's motion to proceed *in forma pauperis* and pay a reduced filing fee of $350, which Plaintiff paid and the Court recorded. *See* ECF No. 8-1; ECF No. 12. Plaintiff otherwise provides no proof of a $250 payment to a "[p]ara-investigator . . . to secure documents;" a $300 payment to an "[i]nmate [p]aralegal;" and $30 in costs for "postage and xerox" in his motion for costs and fees. ECF No. 40 at 1. He also does not provide any evidence that he spent $1,200 "prosecuting this suit and the government raise [sic] evidence cost covers paralegal and agent power of attorney fees" in his second motion for reconsideration. ECF No. 44 at 6. Nor is it likely, had Plaintiff presented any documentation for these costs, that the Court would find them reasonable. Thus, Plaintiff's recovery is limited to the $350 filing fee, as his remaining costs and fees are both undocumented and seemingly unreasonable.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiff's motions for reconsideration and **GRANTS IN PART** Plaintiff's motion for an award of litigation costs. Specifically, Plaintiff is awarded taxable costs in the amount of $350.00. The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge